JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ROBERT AND ERLINDA TURNER | OCWEN LOAN SERVICING, LLC, et al. |

| (b) County of Residence of First Listed Plaintiff SAN MATEO<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant FLORIDA<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |

| (c) Attorney's (Firm Name, Address, and Telephone Number)<br><br>GARRY COHEN<br>GRATHWOHL, RAUCH & COHEN<br>100 Marine Parkway, Suite 305<br>Redwood City, CA 94065 | Attorneys (If Known)<br><br>Eric D. Houser<br>HOUSER & ALLISON, APC<br>9970 Research Drive<br>Irvine, CA 92618 |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury— Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation<br>☒ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☒ 245 Tort Product Liability<br>☒ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities – Employment<br>☐ 446 Amer. w/Disabilities – Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| | | | **IMMIGRATION** | | |
| | | | ☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus – Alien Detainee<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):<br>28 U.S.C. Section1441(b)<br>Brief description of cause:<br>Wrongful Foreclosure, Fraud, Breach of Contract |
|---|---|

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND: ☐ Yes ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE". |
|---|---|

| IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)<br>(PLACE AND "X" IN ONE BOX ONLY) | ☒ SAN FRANCISCO/OAKLAND | ☐ SAN JOSE |
|---|---|---|

DATE
5/23/08

SIGNATURE OF ATTORNEY OF RECORD

1  Eric D. Houser (SBN 130079)
2  J. Owen Campbell (SBN 229976)
   HOUSER & ALLISON
3  A Professional Corporation
   9970 Research Drive
4  Irvine, California 92618
   Telephone: (949) 679-1111
5  Facsimile: (949) 679-1112
   ocampbell@houser-law.com
6
   Attorneys for Defendant
7  Ocwen Loan Servicing, LLC

**FILED**

MAY 2 3 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8              **UNITED STATES DISTRICT COURT**
9
             **NORTHERN DISTRICT OF CALIFORNIA**
10

11  Robert and Erlinda Turner,                )  Case No.:
                                              )
12                        Plaintiffs,         )  **NOTICE OF REMOVAL OF**
                                              )  **ACTION BASED ON DIVERSITY**  **BZ**
13  v.                                        )  **JURISDICTION**
                                              )
14  Ocwen Loan Servicing, LLC and All         )  **[28 U.S.C. § 1441(b)]**
    Persons Unknown, Claiming Any Legal       )
15  or Equitable Right, Title, Estate, Lien,  )
    or Interest in the Property Described in  )
16  the Complaint Adverse to Plaintiff's      )
    Title, or Any Cloud on Plaintiff's Title  )
17  Thereto, and Does 1 through 30,           )
    inclusive,                                )
18                                            )
                                              )
19                        Defendants.         )
                                              )
20
21
22      **TO THE CLERK OF THE ABOVE-ENTITLED COURT AND ALL**
23
    **PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**
24
25          PLEASE TAKE NOTICE that Defendant Ocwen Loan Servicing, LLC
26  ("Ocwen") hereby removes to this Court the above-captioned action described
27
    further below:
28

---

**NOTICE OF REMOVAL**
1

I:\CIVIL\OCWEN\Turner (44536)\pldg\notice removal.doc

1.    A complaint was filed in the San Mateo County Superior Court on or about April 17, 2008, entitled <u>Robert and Erlinda Turner v. Ocwen Loan Servicing, et al.</u>, Case No. CIV 472136 (the "State Court Action").  True and correct copies of all pleadings served on Ocwen to date in the State Court Action are attached hereto as **Exhibit "A."**

2.    Ocwen was served with the summons and complaint on May 5, 2008. Ocwen's attorneys had previously received a mailed, incomplete summons and complaint, on April 24, 2008.  Ocwen removes this case within 30 days of service and within one year of the filing of the complaint.

3.    Ocwen is the only named defendant in this case.  Accordingly, this removal is submitted without joinder by any other defendant.

## DIVERSITY

4.    This action is may be removed to the instant Court diversity jurisdiction exists pursuant to 28 U.S.C. § 1441(b) because this is a civil action between citizens of different states and the matter in controversy likely exceeds the sum of $75,000.00, exclusive of interest and costs.  Supplemental jurisdiction exists with respect to any remaining claims pursuant to 28 U.S.C. § 1367.

### Citizenship of the Parties

5.    The complaint alleges that Plaintiffs are residents of San Mateo County, California.  *See* Complaint ¶ 1.

---

NOTICE OF REMOVAL
2

I:\CIVIL\OCWEN\Turner (44536)\pldg\notice removal.doc

6.    Ocwen is a Delaware limited liability company, with its principal

place of business in Florida.  For diversity purposes, the citizenship of a limited

liability company is determined by the citizenship of its members.  *Johnson v.*

*Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  At the

present time and at the time of commencement of this action, Ocwen's sole

member is Ocwen Financial Corporation, which is a citizen of Florida because it is

incorporated and headquartered in Florida.  Therefore, Ocwen is a citizen of

Florida. Ocwen is not a citizen of California.

## Amount in Controversy

7.    The complaint alleges wrongful foreclosure, cancellation of trustee's

deed, and quite title, among other causes of action.  These claims seek return of

the real property sold at trustee's sale, and relate to the amount due on Plaintiffs'

loan secured by deed of trust.  In that the claims alleged in Plaintiffs' complaint

seek to rescind the foreclosure of the secured debt, the amount in controversy is

the full amount of the secured debt.  The total debt on the loan secured by the deed

of trust was $421,081.81 as of the date of the foreclosure sale.  A true and correct

copy of the recorded Trustee's Deed Upon Sale is attached hereto as **Exhibit "B"**

and judicial notice of this public record is respectfully requested pursuant to

Federal Rule of Evidence 201.  The original principal balance on the loan was

$368,000.00.  A true and correct copy of the deed of trust is attached hereto as

**Exhibit "C"** and judicial notice of this public record is respectfully requested pursuant to Federal Rule of Evidence 201.

8.     The complaint also alleges fraud, breach of contract, unfair business practices, and wrongful eviction.  These causes of action, in addition to the wrongful eviction cause of action stated above, seek compensatory damages for the injuries allegedly suffered by Plaintiffs, including "extreme emotional distress and monetary loss."  *See* Complaint ¶ 15.

9.     The complaint additionally seeks punitive damages against Ocwen.  Under California law, punitive damages are recoverable for fraud.  Therefore, the punitive damages may be included in the amount in controversy.  *See Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D.Cal. 2002) (the amount in controversy for diversity jurisdiction may include punitive damages if recoverable under state law).

10.     The complaint additionally seeks attorneys' fees against Ocwen for alleged violations of unfair business practices.  *See* Complaint ¶¶ 40, 58.  These allegations may be included in the amount in controversy.  *See Simmons v. PCR Technology*, 209 F.Supp. 2d 1029, 1034-35 (N.D. Cal. 2002) (reasonable attorneys' fees anticipated to be incurred may be included in the amount in controversy for diversity jurisdiction).

11.    Accordingly, the amount in controversy includes the amount of secured debt, more than $421,081.81, plus the compensatory damages sought for "extreme emotional distress and monetary loss," breach of contract, fraud, and other claims, plus punitive damages, plus anticipated attorneys' fees for the litigation.  Accordingly, the amount in controversy in this action exceeds $75,000.00.

12.    This action is properly removed to this Court pursuant to 28 USC § 1441(b).

DATED: May 22, 2008

HOUSER & ALLISON
A Professional Corporation

By
Eric D. Houser
J. Owen Campbell
Attorneys for Defendant
Ocwen Loan Servicing, LLC

---

**NOTICE OF REMOVAL**
5

## PROOF OF SERVICE

1

2

3    I am employed in the County of Orange, State of California. I am over the

4    age of eighteen and not a party to the within action. My business address is 9970
     Research Drive, Irvine, California 92618.

5

6    On May 23, 2008, I served the following document described as:

7    **NOTICE OF REMOVAL OF ACTION BASED ON DIVERSITY
     JURISDICTION [28 U.S.C. § 1441(b)]**

8

9    On the following interested parties in this action:

10   Garry Cohen
     Grathwohl, Rauch & Cohen
11   100 Marine Parkway, Suite 305
12   Redwood City, CA 94065
     Tel: (650) 592-8600
13   Fax: (650) 592-2019

14

15   **[X]**   VIA MAIL -- By placing a true copy thereof enclosed in a sealed
             envelope(s) addressed as above, and placing each for collection and mailing
16           on the date following ordinary business practices. I am readily familiar with
             my firm's business practice and collection and processing of mail with the
17           United States Postal Service and correspondence placed for collection and
             mailing would be deposited with the United States Postal Service at Irvine,
18           California, with postage thereon fully prepaid that same day in the ordinary
             course of business.

19

20   I declare under penalty of perjury under the laws of the United States of
     America, that the foregoing is true and correct.

21

22   Executed on May 23, 2008, at Irvine, California.

23

24

25                                                  Sherie L. Cleeré

26

27

28

                              ────────────────────────────────
                                    NOTICE OF REMOVAL
                                            6
     I:\CIVIL\OCWEN\Turner (44536)\pldg\notice removal.doc

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Ocwen Loan Servicing, LLC and All Persons Unknown, Claiming Any Legal
or Equitable Right, Title, Estate, Lien, or Interest in the Property
Described in the Complaint Adverse to Plaintiff's Title, or Any
Cloud on Plaintiff's Title Thereto, and Does 1 through 30 inclusive
**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE)* :
Robert and Erlinda Turner

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ENDORSED FILED**
SAN MATEO COUNTY

APR 1 7 2008

Clerk of the Superior Court
by B. Montgomery
DEPUTY CLERK

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Mateo County<br>Southern<br>400 County Center            Redwood City, CA 94063 | CASE NUMBER:<br>*(Número del Caso):*  CIV 472136 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Garry Cohen                          Grathwohl, Rauch & Cohen PC
100 Marine Parkway, Suite 305        Redwood City, CA 94065
(650) 592-8600

| DATE: APR 1 7 2008    JOHN C. FITTON    Clerk, by    L. MONTGOMERY    , Deputy |
|---|
| *(Fecha)*                                 *(Secretario)*                        *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)* :
3. ☑ on behalf of *(specify)*: Ocwen Loan Servicing LLC
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☑ other *(specify)*: LLC
4. ☑ by personal delivery on *(date)*: 5-5-08

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

EXHIBIT____
PAGE ____ OF ____

GARRY COHEN, State Bar No. 177859
CHARLES R. RAUCH, State Bar No. 176163
GRATHWOHL, RAUCH & COHEN PC
100 Marine Parkway, Suite 305
Redwood City, CA 94065
Telephone: 650 592-8600
Fax: 650 592-2019

Attorney for Plaintiff
Robert & Erlinda Turner

**FILED**
**SAN MATEO COUNTY**

APR 1 7 2008

Clerk of the Superior Court

By
       DEPUTY CLERK

## IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| Robert and Erlinda Turner<br><br>      Plaintiffs,<br><br>vs.<br><br>Ocwen Loan Servicing, LLC and All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintiff's Title, or Any Cloud on Plaintiff's Title Thereto, and Does 1 through 30, inclusive<br><br>      Defendants | Case No. **CIV472136**<br><br>**VERIFIED COMPLAINT TO SET ASIDE TRUSTEE'S SALE/WRONGFUL FORECLOSURE; CANCEL TRUSTEE'S DEED; QUIET TITLE OF REAL PROPERTY; FRAUD/ MISREPRESENTATION; ACCOUNTING; UNFAIR BUSINESS PRACTICES; BREACH OF CONTRACT; and WRONGFUL EVICTION [Illegal lockout].**<br><br>[Civil Code §2924; Code Civ. Proc. §§ 760.010 et seq and §1060; Bus. & Prof Code §17200] |

Plaintiffs, ROBERT and ERLINDA TURNER, complain and allege as follows:

### GENERAL ALLEGATIONS

1.    Plaintiffs are residents of San Mateo County, California and occupants of the subject single family residential real property.

2.    The subject of this action is real property located in San Mateo County, California, commonly known as 1 Appian Way #705-5, South San Francisco, California, with the following legal description:

Parcel I:

Unit 705-5, including the decks(s), as designated on the map entitled "Colina unit No. 1", which filed in the

00044329.WPD

1  office of the recorder of the county of San Mateo, state of California, on October 23, 1974, in book 86 of maps at

2  pages 18 to 27, inclusive, and the certificate of correction recorded September 29, 1975 in book 6945 of official

3  records, page 509 (File No. 94067-AI), and the certificate of correction recorded December 2, 1975 in book 6995

4  official records, page 732 (17040-AJ).

5      Excepting there from any portion of the common area lying within said unit.

6      Parcel II:

7      Together with the following appurtenant easements:

8      1. Non-Exclusive easements for the support of said parcel I through the common area and for repair of said

9  parcel  a through all other units and through the common area.

10     2. An exclusive easement to use parking space No. 31-P, as said on the aforesaid map.

11     Parcel III:

12     An undivided .8469 percent interest as tenant in common in and to the common area, for

13  increment I, as shown on the plan and described in exhibit "S" of the restrictions.

14     Parcel IV:

15     Together with non-exclusive easements appurtenant to the common area through each unit and

16  parking space for support and repair of the common area.  (**Hereinafter "the Property."**)

17     3.      Plaintiffs are informed and believe and on that basis allege that, at all times mentioned in

18  this complaint, defendant Ocwen Loan Servicing, LLC (hereinafter "Ocwen"), is a company licensed to

19  do business, and doing business under and by virtue of the laws of the State of California.

20     4.      Plaintiffs are informed and believe and on that basis allege that, at all times mentioned in

21  this complaint, defendant Ocwen was engaged in the banking and loan business as the servicing company

22  for the mortgage on the Property.  Plaintiffs further allege that Ocwen is also a debt collection company

23  and that its Real Estate Owned Department has taken title to the Property through a foreclosure sale.

24     5.      Plaintiffs do not know the true names of other defendants who might claim any legal or

25  equitable right, title, estate, lien, or interest in the Property described in the complaint adverse to

26  plaintiffs' title, or any cloud on plaintiffs' title thereto.  Such persons are joined as defendants "all

27  persons unknown claiming any interest in the property" and therefore sues them by fictitious names,

28  DOES 1 through 30 inclusive.  The names, capacities, and relationships of defendants named as DOES

00044329.WPD

1  1 through 30 will be alleged by amendment to this complaint when they are known.

2        6.      Plaintiffs are informed and believe and on that basis allege, that at all times mentioned in

3  this complaint, defendants were the agents and employees of their co-defendants, and in doing the things

4  alleged in this complaint were acting within the course and scope of that agency and employment.

5        7.      It has been necessary that plaintiff obtain a title report on the property in the form of a

6  Preliminary Title Report at a nominal expense which is reasonable for such purpose. The title report will

7  be kept at Grathwohl, Rauch & Cohen PC's offices situated at 100 Marine Parkway, Suite 305, Redwood

8  City, California for inspection, use, and copying by the parties to this action.

9
                                **FIRST CAUSE OF ACTION**
10                              Set Aside Sale/Wrongful Foreclosure

11       8.      Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1-7.

12       9.      Plaintiffs were the owners of the Property described in paragraph 2.

13       10.     Plaintiffs were instructed by defendant Ocwen to submit a short-sale package, which they

14  did in January 2008, and that the Property would not be foreclosed upon.

15       11.     Plaintiffs allege that the sale was conducted in violation of an agreement between the

16  trustor and defendants to allow a sale to go through to avoid foreclosure.

17       12.     Plaintiffs are informed and believe that defendant Ocwen, through its Real Estate Owned

18  department, now claims to be the owner, by virtue of a trustee's sale which took place in or around

19  January, 2008.

20       13.     Plaintiffs allege that on or about February 20, 2008 they were served with a Notice to Quit.

21       14.     Plaintiffs allege that on or about February 22, 2008 a real estate agent posted a notice of

22  the Property claiming to be to determine the occupancy status of the Property.

23       15.     The sale was improperly held and the trustee's deed wrongfully executed, delivered, and

24  recorded in that the presale procedures were invalid, in that the sale procedures were improper and also

25  that defendants had agreed to postpone all foreclosure action pending review of the short-sale application,

26  all in violation of the duties and obligations of defendants to plaintiffs, all to plaintiffs' losses and

27  damages in that plaintiffs have lost the full use and enjoyment of the Property and has been wrongfully

28  deprived of legal title by forfeiture and has been caused extreme emotional distress and monetary loss.

00044329.WPD

1    16.    Plaintiffs offer to tender to defendants the amounts due and owing upon the sale of the

2    Property so that the claimed default may be cured and plaintiffs may be reinstated to all their former

3    rights and privileges under the promissory note and deed of trust. Plaintiffs are ready, willing, and able

4    to tender those sums, if any, less damages that they has suffered, that the Court finds due and owing on

5    rendering the accounting requested in the Fifth Cause of Action of this complaint.

6                            **SECOND CAUSE OF ACTION**
                              **To Cancel Trustee's Deed**

7    17.    Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1-16.

8    18.    Defendants claim an estate or interest in the real property described in paragraph 1

9    adverse to that of plaintiffs, but defendants' claims are without any right; defendants have no estate,

10   right, title, or interest in the real property.

11   19.    The claims of said defendants are based on the trustee's deed of sale.

12   20.    Although the trustee's deed might appear to be valid on its face, it is invalid, void, and of

13   no force or effect regarding plaintiff's interests in the real property described above, for the reasons set

14   forth in the First Cause of Action.

15   21.    The interest in the described real property claimed by defendants, based on the trustee's

16   deed, is a cloud on plaintiffs' title in and to the real property, tends to depreciate its market value, restricts

17   plaintiffs' full use and enjoyment of the real property, and hinders plaintiffs' right to unrestricted

18   alienation of it. If the trustee's deed is not delivered and canceled, there is a reasonable fear that plaintiff

19   will suffer additional serious injury.

20                            **THIRD CAUSE OF ACTION**
                              **Quiet Title**

21

22   22.    Plaintiffs re-allege, and incorporate herein by reference paragraphs 1-21.

23   23.    Plaintiffs seek to quiet title against any defendant claiming an ownership interest in the

24   Property created by/through the purported foreclosure sale and resulting trustee's deed. Said defendant's

25   claims are without any right, and defendants have no right, title, estate lien, or interest in the Property vis

26   a vis said foreclosure sale.

27   24.    Plaintiffs name as defendants in this action all persons unknown, claiming any legal or

28   equitable right, title, estate, lien or interest in the Property adverse to plaintiff's title, or any cloud on

00044329.WPD

EXHIBIT
PAGE _____ OF _____

1   plaintiff's title to the Property. The claims of each unknown defendant are without any right, and these

2   defendants have no right, title, estate lien, or interest in the Property.

3       25.     Plaintiffs desire and are entitled to a judicial declaration quieting title in plaintiffs as of

4   the date of the purported sale.

### FOURTH CAUSE OF ACTION
#### Fraud/Misrepresentation

5

6       26.     Plaintiff hereby re-alleges, and incorporates by reference paragraphs 1-25.

7       27.     Plaintiffs had retained the services of a real estate agent to assist them with a short-sale

8   of the Property as suggested by defendant Ocwen.

9       28.     On or about December 11, 2007, pursuant to telephone calls with Ocwen, Plaintiffs caused

10  their real estate agent to submit a request for a short-sale. Ocwen was informed that the January 2008

11  payment would not be forthcoming.

12      29.     In early January 2008, Plaintiffs informed Ocwen that they had a buyer for the Property

13  and had not paid the January 2008 payment and once again confirmed that any foreclosure action would

14  not occur. The Ocwen employee indicated that the short-sale package should be submitted as soon as

15  possible and that foreclosure proceedings would not take place pending the review of the sale.

16      30.     On January 14, 2008, in reliance of Ocwen's statements, the short-sale package was

17  completed and submitted to Ocwen.

18      31.     Notwithstanding the representations, Ocwen went ahead and conducted a foreclosure sale

19  in January 2008 wherein its Real Estate Owned department took over the Property.

20      32.     When defendants, and each of them, made the above representations they either knew

21  them to be false or had no reasonable grounds for believing that the representations were true.

22      33.     Defendants, and each of them, made the representations with the intent to defraud,

23  mislead and/or induce plaintiffs into forfeiting their home.

24      34.     As a proximate result of the misrepresentations, plaintiffs sustained injuries and

25  damages described herein.

### FIFTH CAUSE OF ACTION
#### Accounting

26

27      35.     Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1-.

28

00044329.WPD

EXHIBIT____
PAGE ____ OF ____

36. The amount of money still due and owing to defendant is unknown to plaintiff and cannot be determined without an accounting.

## SIXTH CAUSE OF ACTION
### Unfair Business Practices

37. Plaintiffs hereby re-allege and incorporate herein by reference paragraphs 1-36.

38. Plaintiffs are informed and believe and thereupon allege that the defendants and each of have a standard practice of servicing loans in such a manner as to purposefully cause confusion such that a borrower does not know if his/her property is going through foreclosure, been postponed subject to a review of a short-sale and similar confusion caused by the various departments of Ocwen failing to communicate with each other. This practice includes having a loss mitigation department that makes promises that it fails to relay to the foreclosure department and visa versa. The practices also include continuing with foreclosure sales while telling borrowers their will not be any foreclosure proceedings and then denying the borrowers due process by failing to provide them with proper notice that the Trustee sale is actually going forward.

39. As a proximate result of said acts and conduct of the defendants, and each of them, plaintiffs sustained the injuries and damages set forth herein.

40. Based upon the unfair business practices of the defendants, and each of them, plaintiffs are entitled to damages and attorneys fees, according to proof at time of trial.

## SEVENTH CAUSE OF ACTION
### Breach of Contract

41. Plaintiffs hereby reallege and incorporate by reference paragraphs 1-40.

42. Plaintiff alleges the oral agreements and writings as set forth above between Plaintiffs and Defendants constitute an agreement. Defendants agreed to stop foreclosure in consideration for Plaintiff providing a Buyer for the Property, saving Ocwen considerable time and money.

43. On or about January, 2008 Defendant Ocwen breached the agreement by selling Plaintiffs house through foreclosure.

44. Plaintiffs have suffered severe emotional and economic loss caused by Ocwen's breach of the agreements.

00044329.WPD

EXHIBIT_____
PAGE _____ OF _____

## EIGHTH CAUSE OF ACTION
### Forcible Eviction – Illegal Lockout

45.   Plaintiffs hereby reallege and incorporate by reference paragraphs 1-44.

46.   On February 20, 2008 a three day Notice to Quit was posted on the Property.

47.   On February 27, 2008 the law firm handling the eviction was given written notice of the dispute at issue in this case and was asked to cease all eviction efforts.

48.   On March 3, 2008 a notice was posted on the Property that stated that the property was under the supervision of defendant Ocwen.

49.   On March 5, 2008, based upon Plaintiffs receiving the March 3rd posting, another letter was sent directly to Ocwen advising it that the foreclosure was improper and that all eviction actions should be stopped.

50.   On March 30, 2008 the property was re-keyed by Ocwen, or at its request, illegally locking out Plaintiffs from their home. Plaintiffs are informed and believe that Ocwen claims that the Property was abandoned, but it had the prior correspondence stating otherwise and it also failed to provide a Notice of Belief of Abandonment as required by California Civil Code §1951.3.

51.   Plaintiffs have been and continue to be denied access to their personal property items, including clothes, and continues to suffer damages caused by said lock-out.

**WHEREFORE**, plaintiffs demand judgment as follows:

52.   That the Court issue (a) a declaration that the sale of the Property is null and void and of no force or effect, and (b) an order setting aside the trustee's sale of the real property.

53.   That the Court (a) issue an order that defendant deliver the trustee's deed to the Court, and (b) cancel the trustee's deed.

54.   That the Court order judgment quieting title in plaintiffs as owners of the real property described in paragraph 2, declaring that defendants have no right, title, estate, lien, or interest in the property adverse to Plaintiff.

55.   That the Court render an accounting between plaintiff and defendant, determining the amount, if any, actually due and owing from plaintiff to defendant.

56.   That Plaintiff recover special and general damages in accordance with proof at trial.

57.   That punitive damages be awarded as against the defendants.

00044329.WPD

1    58.    That plaintiff recover his attorneys' fees and costs in this action, and that the Court

2   award all other appropriate relief.

3   Dated: April 15 , 2008

4                                    GRATHWOHL, RAUCH & COHEN

5

6                  By:        _____

7                             Garry Cohen
                             Attorney for Plaintiff Erlinda Turner

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00044329.WPD

1 | **VERIFICATION**

2 |     I, Erlinda Turner, am the plaintiff in the above-entitled action. I have read the foregoing

3 | complaint and know the contents thereof. The same is true of my own knowledge, except as to those

4 | matters which are therein alleged on information and belief, and as to those matters, I believe it to be

5 | true.

6 |     I declare under penalty of perjury under the laws of the State of California that the foregoing

7 | is true and correct. Executed April _16_, 2008 in Redwood City, California.

8 |
9 |
10 |
11 |             Erlinda Turner

00044329.WPD

# NOTICE OF CASE MANAGEMENT CONFERENCE

TURNER

**ENDORSED FILED**
**SAN MATEO COUNTY**

APR 17 2008

Clerk of the Superior Court
By R. Montgomery
DEPUTY CLERK

vs.

OCWEN

Case No. _____ **CIV 4 7 2 1 3 6**

Date: _____ ~~AUG 2 8 2008~~

Time: 9:00 a.m.

Dept. ___ on Tuesday & Thursday
Dept. 28 – on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of Court and Local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

   a. Serve all named defendants and file proofs of service on those defendants with the court within 60 days of filing the complaint (CRC 201.7).

   b. Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

   c. File and serve a completed Case Management Statement at least 15 days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

   d. Meet and confer in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30 days before the date set for the Case Management Conference.

---

**2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

---

3. Continuances of case management conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation To ADR and Proposed Order (see attached form.). If plaintiff files a Stipulation To ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10 days prior to the first scheduled case management conference, the case management conference will be continued for 90 days to allow parties time to complete their ADR session. The court will notify parties of their new case management conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off the Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management judge will issue orders at the conclusion of the conference that may include:

   a. Referring parties to voluntary ADR and setting an ADR completion date;

   b. Dismissing or severing claims or parties;

   c. Setting a trial date.

8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org.

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference (see attached CourtCall information).

EXHIBIT_____

PAGE _____ OF _____

**CM-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                          FAX NO. *(Optional)*: <br> E-MAIL ADDRESS *(Optional)*: <br> ATTORNEY FOR *(Name)*: | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF |
|---|
| STREET ADDRESS: **Superior Court of California** |
| MAILING ADDRESS: **County of San Mateo** |
| CITY AND ZIP CODE: **400 County Center** |
| BRANCH NAME: **Redwood City, CA 94063-1655** |

| PLAINTIFF/PETITIONER: |
|---|
| DEFENDANT/RESPONDENT: |

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| (Check one): ☐ **UNLIMITED CASE** <br> (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** <br> (Amount demanded is $25,000 or less) | |

| A CASE MANAGEMENT CONFERENCE is scheduled as follows: |
|---|
| Date:                Time:          Dept.:          Div.:          Room: |
| Address of court *(if different from the address above)*: |

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐ have had a default entered against them *(specify names)*:

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint    *(describe, including causes of action)*:

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-110 [Rev. January 1, 2007] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, <br> rules 3.720–3.730 <br> www.courtinfo.ca.gov |
|---|---|---|

EXHIBIT____
PAGE _____ OF _____

<table>
<tr><td>PLAINTIFF/PETITIONER:</td><td rowspan="2">CASE NUMBER:</td></tr>
<tr><td>DEFENDANT/RESPONDENT:</td></tr>
</table>

**CM-110**

10. d.  The party or parties are willing to participate in *(check all that apply):*
- (1) ☐ Mediation
- (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
- (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
- (4) ☐ Binding judicial arbitration
- (5) ☐ Binding private arbitration
- (6) ☐ Neutral case evaluation
- (7) ☐ Other *(specify):*

e.  ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f.  ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g.  ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**
☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**
a.  ☐ Insurance carrier, if any, for party filing this statement *(name):*
b.  Reservation of rights:  ☐ Yes  ☐ No
c.  ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
☐ Bankruptcy  ☐ Other *(specify):*
Status:.

**14. Related cases, consolidation, and coordination**
a.  ☐ There are companion, underlying, or related cases.
- (1) Name of case:
- (2) Name of court:
- (3) Case number:
- (4) Status:
☐ Additional cases are described in Attachment 14a.
b.  ☐ A motion to  ☐ consolidate  ☐ coordinate  will be filed by *(name party):*

**15. Bifurcation**
☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**
☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

EXHIBIT____
PAGE _____ OF _____

Superior Court of California - County of San Mateo

## ADR Stipulation and Evaluation Instructions

In accordance with *Local Rule 2.3(i)(3)*, all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court. The Office of the Clerk is located at:

Clerk of the Superior Court, Civil Division
Attention: Case Management Conference Clerk
Superior Court of California, County of San Mateo
400 County Center
Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

- Original signatures for all attorneys (and/or parties in pro per);
- The name of the neutral;
- Date of the ADR session; and
- Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral. If parties would like a copy of the San Mateo County Superior Court's ADR Panelist List and information sheets on individual panelists, they may go to the court's website (see below) or contact the ADR Coordinator at (650) 363-1962 or (650) 599-1070.

### If Filing the Stipulation Prior to an Initial Case Management Conference

To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference. The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

### If Filing Stipulation Following a Case Management Conference

When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [*Local Rule 2.3(i)(3)*].

### Post-ADR Session Evaluations

*Local Rule 2.3(i)(5)* requires submission of post-ADR session evaluations within 10 days of completion of the ADR process. Evaluations are to be filled out by both attorneys and clients. A copy of the Evaluation By Attorneys and Client Evaluation are attached to the ADR Panelist List or can be found on the court's web site.

### Non-Binding Judicial Arbitration

Names and dates are not needed for stipulations to judicial arbitration. The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted. The Judicial Arbitration Administrator can be contacted at (650) 363-4896. For further information regarding San Mateo Superior Court's ADR program, contact the ADR offices at (650) 599-1070 or the court's ADR web site at http//www.co.sanmateo.ca.us.sanmateocourts/adr.htm.

ADR-CV-1 [Rev. 9/04]                                                                 www.sanmateocourt.org

EXHIBIT_____
PAGE _____ OF _____

## Appropriate Dispute Resolution (ADR) Information Sheet
### Superior Court of California, San Mateo County

*Appropriate Dispute Resolution (ADR) is a way of solving legal problems without going to trial. All types of disputes can be resolved through ADR. The Court encourages you to use some form of ADR before you proceed to trial. The most popular form of ADR is mediation. The Multi-Option ADR Project can help you choose the option that is best for your case and refer you to an experienced ADR provider.*

### What are the Advantages of Using ADR?

- *Faster* – Traditional litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control & flexibility* – Parties choose the ADR process most appropriate for their case.

- *Cooperative & less stressful* – In mediation, parties cooperate to find a mutually agreeable solution to their dispute.

### What are the Disadvantages of Using ADR?

- *You may go to Court anyway* – If you can't resolve your case using ADR, you may still have to spend time and money on your lawsuit.

- *Not free* – The neutrals charge fees (except in judicial arbitration), but you may qualify for financial aid.

### Are There Different Kinds of ADR?

- **Mediation** - A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options and agree on a solution that is acceptable to all sides.

- **Judicial Arbitration** – Is an informal hearing where a neutral person (arbitrator) reviews the evidence, hears arguments and makes a decision on your case. In non-binding judicial arbitration, parties have the right to reject the arbitrator's decision and proceed to trial. For more information regarding judicial arbitration, please see the attached sheet or call (650) 363-4896.

- **Binding Arbitration** - The parties agree ahead of time to accept the arbitrator's decision as final. Parties who choose binding arbitration give up their right to go to Court and their right to appeal the arbitrator's decision.

- **Neutral Evaluation** - A neutral person (evaluator) listens to the parties, asks them questions about their case, reviews evidence and may hear witness testimony. The evaluator helps the parties identify the most important legal issues in their case and gives them an analysis of the strengths and weaknesses of each side's case. Special neutral evaluation guidelines are available on the Court's website at www.sanmateocourt.org/adr.

- **Settlement Conference** – Although similar to mediation, the neutral (a judge) may take more control in encouraging parties to settle. Settlement conferences take place at the courthouse. All cases have a mandatory settlement conference approximately 2-3 weeks before the trial date. For questions regarding settlement conferences, call (650) 599-1076.

Appropriate Dispute Resolution Information Sheet

Form adopted for Mandatory Use
Local Court Form ADR-CV-A (New September 2007)

[CA Rule of Court §3.221]
www.sanmateocourt.org

EXHIBIT____
PAGE _____ OF _____

*Judicial Arbitration, one of the available Appropriate Dispute Resolution (ADR) options, differs from other options in that it is usually court-ordered, unless the parties agree to it.*

## What are the Advantages of Using Judicial Arbitration?

❏ *Free* - Parties do not have to pay for the arbitrator's fee.

❏ *Fast* - Parties are usually given 120 days from the date of the Case Management Conference (CMC) to have their case heard by the appointed arbitrator.

❏ *Informal* - The hearing is conducted by an arbitrator who issues an award. (Arbitrators are usually attorneys who practice or have practiced in San Mateo County.)

## What are the Disadvantages of Using Judicial Arbitration?

❏ The award issued by the arbitrator is not always binding (unless the parties stipulated otherwise). If any party requests a trial within 30 days of the award, the award becomes void and the case continues on to trial.

## How Does Judicial Arbitration Work in San Mateo County?

❏ During your first CMC hearing, the judge may decide to order you to judicial arbitration. You will then receive instructions and a proposed list of arbitrators in the mail.

❏ Parties also may agree to judicial arbitration by filing a *Stipulation and Order to ADR* form at least 10 days before the first CMC. The CMC clerk will then vacate your CMC hearing and send the case to arbitration. The parties will receive instructions and a proposed list of arbitrators in the mail.

❏ Parties can stipulate (agree) to an arbitrator on the Court's Judicial Arbitration Panel list. Otherwise, proposed names of arbitrators will be sent to the parties.

    o   For a list of arbitrators, their resumes, and other information, visit the Court's website at www.sanmateocourt.org/adr. (Go to "Judicial Arbitration Program," "Judicial Arbitration Panelist List" and click on the arbitrator's name. To view the arbitrators by subject matter, click on "Judicial Arbitration Panelists by Subject Matter.")

❏ After the arbitration hearing is held and the arbitrator issues an award, the parties have 30 days to turn down/reject the award by filing a Trial de Novo (unless they have stipulated that the award would be binding).

❏ If the parties reject the award and request a Trial de Novo, the Court will send out notices to the parties of the Mandatory Settlement Conference date and the trial date.

❏ Following your arbitration hearing, you will also receive an evaluation form to be filled out and returned to the Arbitration Administrator.

**For more information, visit the court website at www.sanmateocourt.org/adr or contact Judicial Arbitration: 400 County Center, First Floor, Redwood City, CA 94063. Phone: (650) 363-4896 and Fax: (650) 365-4897**

Appropriate Dispute Resolution Information Sheet

Form adopted for Mandatory Use
Local Court Form ADR-CV-8  [New September, 2007]

[CA Rule of Court §3.221]
www.sanmateocourt.org

EXHIBIT_____

PAGE _____ OF _____

| Attorney or Party without Attorney<br>(Name, Address, Telephone, Fax, State Bar membership number): | Court Use Only |
|---|---|
| **Superior Court of California, County of San Mateo**<br>Hall of Justice and Records<br>400 County Center<br>Redwood City, CA 94063-1655   (650) 363-4711 | |
| Plaintiff(s): | Case Number: |
| Defendant(s): | Current CMC Date: |

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Plaintiff will file this stipulation with the Clerk's Office 10 days prior to or 3 weeks following the first Case Management Conference unless directed otherwise by the Court and ADR Director [*Local Rule 2.3(i)(3)*]. Please attach a Service List.

The parties hereby stipulate that all claims in this action shall be submitted to (select one):

☐ Voluntary Mediation                ☐ Binding Arbitration (private)
☐ Neutral Evaluation                 ☐ Settlement Conference (private)
☐ **Non-Binding Judicial Arbitration CCP 1141.12**   ☐ Summary Jury Trial
☐Other: _____

Case Type: _____
Neutral's name and telephone number: _____
Date of session: _____
(Required for continuance of CMC except for non-binding judicial arbitration)
Identify by name the parties to attend ADR session: _____

---

ORIGINAL SIGNATURES

_____          _____
Type or print name of ☐Party without attorney      ☐Attorney for (Signature)

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant      Attorney or Party without attorney

_____          _____
Type or print name of ☐Party without attorney      ☐Attorney for (Signature)

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant      Attorney or Party without attorney

ADR-CV-2 [Rev. 9/04]          Page 1 of 2          www.sanmateocourt.org

EXHIBIT_____
PAGE _____ OF _____

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

_____
Type or print name of ☐Party without attorney

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant

_____
☐Attorney for (Signature)

Attorney or Party without attorney


_____
Type or print name of ☐Party without attorney

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant

_____
☐Attorney for (Signature)

Attorney or Party without attorney


**IT IS SO ORDERED:**


DATE:                                    _____
                                          JUDGE OF THE SUPERIOR COURT OF SAN MATEO COUNTY


ADR-CV-2 [Rev. 9/04]              Page 2 of 2              www.sanmateocourt.org

EXHIBIT_____
PAGE _____ OF _____

Superior Court of California, County of San Mateo

## DIVISION II
## COURT MANAGEMENT - SUPERIOR COURT

### CHAPTER 1: FORM AND SERVICE OF PAPERS

Rule 2.0  Transfer of Court-Related Functions of the County Clerk to the Superior Court

Pursuant to the authority contained in Government Code section 69898, the court hereby transfers from the County Clerk to the Superior Court Executive Officer, under the direction of the Presiding Judge, all of the powers, duties, and responsibilities required or permitted to be executed or performed by the County Clerk in connection with judicial actions proceedings, and records.

(Adopted, effective July 1, 1996.)

Rule 2.1  Form of Papers Presented for Filing

Reference, CRC, rule 2.100, et seq.

(Adopted, effective July 1, 1996) (Amended effective January 1, 2000) (Amended, effective January 1, 2007)

Rule 2.1.1 Citations to Non-California Authorities.

(Adopted, effective July 1, 1996)(Repealed, effective January 1, 1999)

Rule 2.1.2  Requests for Judicial Notice

(Adopted, effective July 1, 1996)(Repealed, effective January 1, 1999)

Rule 2.1.3 California Environmental Quality Act (CEQA)

If a petition for writ of mandate includes claims under CEQA (Public Resources Code section 21000 et. seq.), the case will be assigned to a judge designated to hear CEQA actions pursuant to Public Resources Code section 21167.1. Plaintiff shall identify the petition as being filed pursuant to "CEQA" on the face of the petition.

(Adopted, effective January 1, 1999)(renumbered from 2.1.4 effective January 1,2000)

Rule 2.1.4 Documents Produced Through a Nonparty

If a party proposes to obtain documents in the custody of a nonparty, as by a subpoena duces tecum, and such documents may be produced by certification or otherwise in lieu of personal appearance by a witness custodian, the request for such documents should specify that they be delivered not later than the first day for which the trial is calendared.

(Adopted, effective January 1, 2000)

EXHIBIT_____
PAGE _____ OF _____

Superior Court of California, County of San Mateo

(c)  Cases filed after July 1, 1992

Upon the filing of a complaint after July 1, 1992, the case shall be subject to all of the civil case management system rules set forth below. Cases filed <u>before</u> July 1, 1992 shall also be subject to these rules except for subsection (d) (Filing and service of pleadings; exceptions).

(d)  Filing and service of pleadings; exceptions.

(1)  Complaint: Except as provided in paragraph 5 below, plaintiff shall within 60 days after filing of the complaint serve the complaint on each defendant along with:

(A)  A blank copy of the Judicial Council Case Management Statement;

(B)  A copy of Local Rule 2.3;

(C)  The Notice of Case Management Conference.

If a matter has been submitted to arbitration pursuant to uninsured motorist insurance, the plaintiff shall file a notice to that effect with the court at the time of filing the complaint, or at the time the matter is submitted. The notice shall include the name, address and telephone number of the insurance company, along with the claim number or other designation under which the matter is being processed.

(2)  Cross-complaint: Except as provided in paragraph 5 below, each defendant shall within 30 days after answering the complaint file any cross-complaint (within 50 days if compliance with a governmental claims statute is a prerequisite to the cross-complaint) not already served with the answer under Code of Civil Procedure section. 428.50 and serve with that cross-complaint:

(A)  A blank copy of the Judicial Council Case Management Statement;

(B)  A copy of Local Rule 2.3;

(C)  The Notice of Case Management Conference.

(3)  Responsive pleadings: Except as provided in paragraph 5 below, each party served with a complaint or cross-complaint shall file and serve a response within 30 days after service. The parties may by written agreement stipulate to one 15-day extension to respond to a complaint or cross-complaint.

If the responsive pleading is a demurrer, motion to strike, motion to quash service of process, motion for a change of venue or a motion to stay or dismiss the case on forum non conveniens grounds, and the demurrer is overruled or the motion denied, a further responsive pleading shall be filed within 10 days following notice of the ruling unless otherwise ordered. If a demurrer is sustained or a motion to strike is granted with leave to amend, an amended complaint shall be filed within 10 days following notice of the ruling unless otherwise ordered. The court may fix a time for filing pleadings responsive to such amended complaint.

(4)  Proofs of service: Proofs of service must be filed at least 10 calendar days before the case management conference.

(5)  Exceptions for longer periods of time to serve or respond:

EXHIBIT_____
PAGE _____ OF _____

Superior Court of California, County of San Mateo

specified, relief from the scheduled trial date may not be obtained based upon the ground that counsel is engaged elsewhere.

(7)　　Conference orders: At the initial conference, the program judge will make appropriate pre-trial orders that may include the following:

(A)　　An order referring the case to arbitration, mediation or other dispute resolution process;

(B)　　An order transferring the case to the limited jurisdiction of the superior court;

(C)　　An order assigning a trial date;

(D)　　An order identifying the case as one which may be protracted and determining what special administrative and judicial attention may be appropriate, including special assignment;

(E)　　An order identifying the case as one which may be amenable to early settlement or other alternative disposition technique; ·

(F)　　An order of discovery; including but not limited to establishing a discovery schedule, assignment to a discovery referee, and/or establishing a discovery cut-off date;

(G)　　An order scheduling the exchange of expert witness information;

(H)　　An order assigning a mandatory settlement conference date pursuant to Local Rule 2.3(k) and 2.4; and

(I)　　Other orders to achieve the interests of justice and the timely disposition of the case.

(8)　　CourtCall Telephonic Appearances

(A)　　Reference CRC, Rule 3.670

(B)　　Procedure. Telephonic appearances through the use of CourtCall, an independent vendor, are permitted at case management conference hearings. A party wishing to make a telephone appearance must serve and file a Request for Telephone Appearance Form with CourtCall not less than five court days prior to the case management conference hearing. Copies of the Request for CourtCall Appearance form and accompanying information sheet are available in the Clerk's office. There is a fee to parties for each CourtCall appearance and fees are paid directly to CourtCall. CourtCall will fax confirmation of the request to parties.

(C)　　On the day of the case management conference hearing, counsel and parties appearing by CourtCall must check-in five minutes prior to the hearing. Check-in is accomplished by dialing the courtroom's dedicated toll-free teleconference number and access code that will be provided by CourtCall in the confirmation. Any attorney or party calling after the check-in period shall be considered late for the hearing and shall be treated in the same manner as if the person had personally appeared late for the hearing.

EXHIBIT____
PAGE _____ OF _____

Superior Court of California, County of San Mateo

state that parties have: (i) notified both the judicial arbitration and ADR coordinators; (ii) cancelled the judicial arbitration hearing; (iii) scheduled the ADR session within five months of the previously scheduled judicial arbitration hearing; and (iv) stipulated to a trial date, which is not more than six months from the previously scheduled judicial arbitration hearing.

(i)    Stipulations to Private ADR

(1)    If a case is at issue and all counsel and each party appearing in propria persona stipulate in writing to ADR and file a completed Stipulation and Order to ADR with the clerk of the court at least ten (10) calendar days before the first scheduled case management conference, that conference shall be continued 90 days. The court shall notify all parties of the continued case management conference.

(2)    If counsel and each party appearing in propria persona are unable to agree upon an appropriate ADR process, they shall appear at the case management conference.

(3)    Following an appearance at a case management conference hearing, parties shall, within 21 calendar days , file a completed Stipulation to ADR and Proposed Order identifying the name of the ADR provider, date of ADR session and the names of those who will be in attendance at the ADR session. The completed Stipulation to ADR and Proposed Order shall be filed with the court by plaintiff's counsel. The parties, through counsel, if represented, shall confer with the court's Multi-Option ADR Project (M.A.P.) staff if they cannot agree on a provider. Plaintiff's counsel, shall additionally, send a copy of the completed Stipulation to the court's M.A.P. offices within the same 21-day period.

(4)    All parties and counsel shall participate in the ADR process in good faith.

(5)    To maintain the quality of ADR services the court requires cooperation from all parties, counsel and ADR providers in completing ADR evaluation forms, and returning these forms to the M.A.P. offices within 10 calendar days of the completion of the ADR process.

(6)    In accordance with the Code of Civil Procedure, section 1033.5(c)(4), the court, in its discretion, may allow the prevailing party at trial the fees and expenses of the ADR provider, unless there is a contrary agreement by the parties.

(j)    Setting Short Cause Matters

If the parties agree that the time estimated for trial is 5 hours or less prior to the conference, a written stipulation shall be filed at least 10 calendar days before the case management conference in order to avoid the need to appear at that conference and a copy immediately sent to the Master Calendar Coordinator. In the absence of a stipulation, either party may file a motion to have the matter designated a "short cause" and set the case accordingly. All such matters shall be presumed short cause unless the contrary is established at the hearing on the motion.

(k)    Law and Motion

All law and motion matters shall be heard by the regularly assigned Law and Motion judge.

(l)    Settlement Conferences

All cases not assigned to arbitration or some other dispute resolution mechanism will be assigned two settlement conference dates, the first of which will be at the earliest practicable date under the circumstances presented by the case, and the second within approximately two

EXHIBIT_____

PAGE _____ OF _____

Superior Court of California, County of San Mateo

(2)    Any persons whose consent is required to authorize settlement shall personally attend; those parties that are corporations shall have in attendance an officer or other employee with authority to bind the corporation. Powers of attorney, oral or written, granting counsel settlement authority are unacceptable as a substitute for personal attendance at this conference. Defendant and cross-defendant shall personally attend if there is no insurance coverage, if there is an unsatisfied deductible, or if the insurance carrier is demanding that the insured contribute to settlement.

(3)    With respect to any insured party, a representative of the insurance carrier with authority to settle which is meaningful considering the exposure to loss presented shall personally attend. If the claims representative in personal attendance has any limitation on his or her settlement authority, a representative of the carrier who has no such limitations shall be available to the court by telephone and shall remain available until released by the judge conducting the conference, regardless of the time of day at the location of that representative.

(4)    Upon arrival at the department to which the conference has been assigned, counsel shall check in with the clerk and shall verify the attendance of those persons whose presence is required.

(5)    Notwithstanding the provisions of CRC 3.1380(c), no later than five(5) court days before the date set for the settlement conference each party shall lodge with the office of the court administrator and serve on all other parties a written statement setting forth the following:

(A)    A statement of facts.

(B)    The contentions of each party to the action regarding liability and damages.

(C)    An itemized list of special damages.

(D)    In any case in which personal injury is claimed:

(i)    A description of the nature and extent of any injury claimed, including residuals.

(ii)    A description of the basis for and method of calculation of any claimed wage loss.

(E)    The most recent demand and offer or a description of any other proposed settlement between or among the parties.

(6)    All parties shall be prepared to make a bona fide offer of settlement.

(b)    The personal attendance of any person who is required by these rules to be present may be excused only by the presiding judge upon application made prior to the day on which the conference is scheduled. Any such person whose attendance is excused must remain available by telephone until he or she has been excused by the judge conducting the conference regardless of the time of day at the location of that person.

(c)    No conference may be continued without the consent of the presiding judge or, if known, the judge to whom the case has been assigned for conference.

EXHIBIT____
PAGE _____ OF _____

Superior Court of California, County of San Mateo

## CHAPTER 4. JURY RULES

Rule 2.7 Length of Jury Service

In compliance with CRC 2.1002, a person has fulfilled his or her jury service obligation when he or she has:

(a)     Served on one trial until discharged.

(b)     Been assigned on one day for jury selection until excused by the jury commissioner.

(c)     Attended court but was not assigned to a trial department for selection of a jury before the end of that day.

(d)     Been assigned to a trial department for selection of a jury and has been excused by the trial judge.

(e)     Served one day on call.

(f)     Served no more than 5 court days on telephone standby.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2007)

Rule 2.7.1 Proposed Jury Instructions

(a)     Reference California Rules of Court, Rules 2.1055 and 2.1050.

(b)     The Trial Department shall determine in its discretion the timing of submission of proposed jury instructions.

(Amended, effective January 1, 2002) (Amended, effective January 1, 2006) (Amended, effective January 1, 2007)

Rule 2.7.2 Duty Of Counsel with Respect to Jury Instructions

Before delivery of proposed jury instructions to the trial judge and opposing counsel, counsel shall fill in all blanks, make all strikeouts, insertions and modifications therein which are appropriate to the case. Submission of a form, which requires additions or modifications to constitute a complete and intelligible instruction, shall not be deemed a request for such instruction.

In addition to a hard copy of the proposed jury instructions, counsel shall provide the modified instructions on a computer diskette, and a clean copy of the instructions to be given to the jury.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2006)

Rule 2.7.3 Form of Proposed Jury Instructions (CCP §§ 607a, 609.)

All proposed jury instructions shall conform to the requirements of California Rules of Court, Rule 2.1055. Any jury instructions requested after the conclusion of taking evidence shall be in writing. The court, in its discretion, may permit instructions to be sent into the jury room in "Booklet Form". In

EXHIBIT_____

PAGE _____ OF _____

Superior Court of California, County of San Mateo

Rule 2.7.6  Refund of Jury Fees: Duty to Notify Court

Jury fees shall be refunded pursuant to CCP Section 631.3 only if the party depositing the fees has given the master calendar coordinator written notice, at least two court days before the trial date, that the case settled, dropped or that the party's motion for continuance has been granted.

(Adopted, effective July 1, 2004 [former Rule 2.6])

## CHAPTER 5.  GENERAL RULES

Rule 2.8  Family Law Rules

The local rules of San Mateo Superior Court relating to Family Law are contained in Division V of these rules, infra.

(Adopted, effective July 1, 1996)

Rule 2.9  Required Action

Action shall be taken on all calendared cases and a future date for action shall always be set.  No case shall go "off calendar" without a future action being set.

(Adopted, effective July 1, 1996.)

Rule 2.10  Interpreters and Translators

a)       Notice.  When a party desires an interpreter, it shall be the responsibility of that party to give notice to the Court and all other parties of record.  That party shall make arrangements for the presence and the payment of the interpreter.

b)       Qualifications.  Unless the interpreter is an official court interpreter, the interpreter's name and qualifications shall be provided to the court and opposing counsel five (5) court days prior to the date of the interpreter's appearance .  If the interpreter is an official court interpreter, no prior disclosure is required.

c)       Relations or friends.  Without the consent of all parties, a relation or a friend may not be used as an interpreter or translator in a contested proceeding.

(Adopted, effective January 1, 2000)

**Rules 2.11 thru 2.19 (Reserved)**

## CHAPTER 6.  CIVIL TRIAL RULES

Rule 2.20  Trial Motions, Briefs, Statements, and Witness Lists .

        Upon assignment to a trial department for trial by a jury, each party shall file with that department the following:
                (1)    Any in limine motions and response thereto;
                (2)    Any trial briefs;

EXHIBIT_____
PAGE _____ OF _____

Superior Court of California, County of San Mateo

C.  Application to Designate or Counter-Designate an Action as a Complex Case.

Any party who files either a Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401) or a counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)), designating an action as a complex case in Items 1, 2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court.  The certificate must include supporting information showing a reasonable basis for the complex case designation being sought.  Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action:

(1)  Management of a large number of separately represented parties;
(2)  Complexity of anticipated factual and/or legal issues;
(3)  Numerous pretrial motions that will be time-consuming to resolve;
(4)  Management of a large number of witnesses or a substantial amount of documentary evidence;
(5)  Coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court;
(6)  Whether or not certification of a putative class action will in fact be pursued; and
(7)  Substantial post-judgment judicial supervision.

A copy of the Certificate Re: Complex Case Designation must be served on all opposing parties. Any certificate filed by a plaintiff shall be served along with the initial service of copies of the Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401), summons, and complaint in the action. Any certificate filed by a defendant shall be served together with the service of copies of the counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)) and the initial first appearance pleading(s).

D.  Noncomplex Counter-Designation.

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation has been filed and served and the Court has not previously declared the action to be a complex case, a defendant may file and serve no later than its first appearance a counter Civil Case Cover Sheet designating the action as not a complex case.  Any defendant who files such a noncomplex counter-designation must also file and serve an accompanying Certificate Re: Complex Case Designation in the form prescribed by this Court and setting forth supporting information showing a reasonable basis for the noncomplex counter-designation being sought.

Once the Court has declared the action to be a complex case, any party seeking the Presiding Judge's decision that the action is not a complex case must file a noticed motion pursuant to Section H below.

E.  Decision by Presiding Judge on Complex Case Designation; Early Status Conference.

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation have been filed and served, the Presiding Judge shall decide as soon as reasonably practicable, with or without a hearing, whether the action is a complex case and should be assigned to a single judge for all purposes.

Upon the filing of a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation, the Clerk of the Court shall set a status conference at which the Presiding Judge shall decide whether or not the action is a complex case.  This status conference shall be held no later than (a) 60 days after the filing of a Civil Case Cover Sheet by a plaintiff (pursuant to California Rules of Court, Rule 3.401) or (b) 30 days after the filing of a counter

EXHIBIT_____
PAGE _____ OF _____

# SAN MATEO SUPERIOR COURT

## COURTCALL TELEPHONIC APPEARANCES

### JANUARY, 2004

Until further notice, voluntary telephonic appearances ("CourtCall Appearances") may continue to be made for Case Management Conferences in Departments 6 (Judge Kopp) and 21 (Judge Foiles), and for Civil Law and Motion matters in Department 1 (Judge Mittlesteadt) from 1/1/04 to 6/30/04 or Department 3 (Judge Freeman) from 7/1/04 to 12/31/04.

Counsel may make a CourtCall Appearance as follows :

1.  NOT LESS THAN FIVE (5) COURT DAYS BEFORE THE HEARING DATE IN DEPARTMENTS 6 AND 21 AND NOT LATER THAN 4:30 P.M. ON THE COURT DAY PRIOR TO HEARING IN DEPARTMENT 1 (1/1-6/30) or DEPARTMENT 3 (7/1-12/31) serve and file with CourtCall (not the Court!) a Request for CourtCall Telephonic Appearance (included in this package);

2.  Pay a fee of $55.00 to CourtCall, LLC.

Required filing and payment procedures are detailed within the instruction sheet "How to Use CourtCall," (see reverse). A confirmation from CourtCall, LLC, will be faxed to your office upon the filing and payment outlined above.

A CourtCall Appearance is made as part of a participating Department's usual calendar. Unless notified to the contrary, all counsel who have timely filed their Request and have paid the fee may appear by dialing the toll-free teleconference number provided by CourtCall, LLC. A pre-hearing check-in will occur five minutes before the scheduled hearing time. CourtCall Appearances will generally be afforded a calendar preference.

A CourtCall Appearance is voluntary and may be made without consent of the other party or advance consent of the Court. The Court, however, reserves the discretion to require personal appearance. In matters where only one party elects to make a CourtCall Appearance, the matter will be heard on the Court's speakerphone.

See reverse side for "How to Use CourtCall"

EXHIBIT_____
PAGE _____ OF _____

COURTCALL, LLC

*Telephonic Court Appearances*

6365 ARIZONA CIRCLE

LOS ANGELES, CALIFORNIA 90045

(TEL) (310) 342-0888 (888) 88-COURT

(FAX) (310) 743-1850 (888) 88-FAXIN

## How To Use CourtCall! - SAN MATEO

### Filling Out The Form

**1. Serve:** Not less than 5 Court Days before the hearing (or 4:30 PM the Court day prior to hearing for Dept. 1 through 6/30/04 or Dept. 3 from 7/1/04 through 12/31/04) COMPLETELY fill out the original of the Request form for CourtCall Appearance (the "Request Form"). Retain the original Request Form in your file. DO NOT FILE IT WITH THE COURT. Check the box indicating the method of payment of the fee. **INCOMPLETE REQUEST FORMS MAY RESULT IN A DELAY IN PROCESSING!!**

**2. Fax to CourtCall:** Fax a copy of the Form to CourtCall not less than 5 Court days prior to the hearing (of 4:30 pm the Court day prior to hearing for Dept. 1 or Dept. 3 as noted above). Do not fail to do so, as the CourtCall Calendar is set through these faxes!! **LATE FILINGS, IF ACCEPTED, ARE SUBJECT TO A LATE FEE!!**

**3. Payment by Credit Card:** Fill out credit card information *only* on the copy faxed to CourtCall and have that copy SIGNED by the PERSON WHOSE NAME IS ON THE CREDIT CARD.

**4. Payment by Check:** Fax a copy of check - write case # on check-payable to Telephonic Hearing Account to CourtCall with your Form and mail your check and a copy of your Form to CourtCall.

**5. Proof of Payment/CalendarConfirmation:**
Under normal circumstances you should receive a Confirmation from CourtCall, by fax, within 24 hours of submission of a completed Request Form. The Confirmation will contain your teleconference number and access code (if any**).

**IF YOU DO NOT RECEIVE YOUR FAXED CONFIRMATION FROM COURTCALL WITHIN 24 HOURS OF SUBMISSION, CALL COURTCALL IMMEDIATELY TO VERIFY YOUR STATUS - WITHOUT A WRITTEN CONFIRMATION YOU ARE NOT ON THE COURTCALL CALENDAR!**

FOR INFORMATION AND QUESTIONS ABOUT A COURTCALL APPEARANCE, CALL COURTCALL, NOT THE CLERK/COURT!

### When You Make The Call

· **\* YOU MUST CALL THE TOLL FREE NUMBER ON YOUR CONFIRMATION 5 MINUTES BEFORE YOUR SCHEDULED HEARING TIME. NEVER USE A CELLULAR OR PAY PHONE.** If prompted, dial your Access Code.** You will be advised whether you are joining the call in progress or if you are the first to call or you may be placed on "music-on-hold."

**\* If Court has commenced, DO NOT INTERRUPT!** You will have an opportunity to speak. If the call is in progress and you hear voices, wait until an opportunity to speak arises without interrupting others. The Clerk may be performing a check-in and will get to you.**

**\*** After check-in wait until your case is called. Use your speakerphone while waiting if you are able to mute the microphone to eliminate ambient noise. When your case is called you MUST USE THE HANDSET. Identify yourself each time you speak and use common courtesy.

**\*** If you are the first person on the call be patient, even if you experience silence or are placed on "music-on-hold," as the Clerk will join the call in due course. As others join you will hear a mild beep-beep" indicating others are on the line. Until your case is called do not speak other than with the Clerk. ** If the Clerk does not join the call within 15 minutes after your scheduled hearing time, have a staff member call CourtCall on our toll free Help Line - (888) 882-6878 and we will be happy to assist you. **DO NOT LEAVE THE LINE!**

"If the Confirmation from CourtCall does not list an access code with your assigned teleconference number, your matter will be heard privately, not in open court. The 5 minute check-in period will be conducted by a Teleconference Specialist who will conduct the conference in accordance with the Court's instructions. You will be placed on "music-on-hold" while you wait for the Judge to call your matter. The rules regarding cell phones and use of handsets apply. IF YOUR HEARING IS CONTINUED YOU MUST NOTIFY COURTCALL OF THE CONTINUANCE, IN WRITING, PRIOR TO YOUR COURTCALL APPEARANCE TO HAVE YOUR FEE APPLY TO THE CONTINUED HEARING. MATTERS CONTINUED AT THE TIME OF THE HEARING REQUIRE A NEW FORM AND A NEW FEE FOR THE CONTINUED DATE.

EXHIBIT_____

PAGE _____ OF _____

| ATTORNEY OF RECORD (Name /Address/Phone/Fax): | DO NOT FILE WITH COURT |
|---|---|
| State Bar No.: _____<br><br>ATTORNEY FOR (Name):<br><br>San Mateo Superior Court | COMPLETELY FILL OUT/CORRECT FORM BEFORE SUBMITTING TO COURTCALL!! |
| | CASE NUMBER:<br><br>JUDGE/DEPARTMENT:<br><br>DATE AND TIME:<br><br>NATURE OF HEARING: |
| **REQUEST FOR COURTCALL TELEPHONIC APPEARANCE** | |

1. _____ (Name of specific attorney appearing telephonically) requests a CourtCall telephonic calendar appearance at the above referenced proceeding and agrees to provisions of the Rule/Order/Procedure Re: CourtCall Telephonic Appearances. I UNDERSTAND THAT *I DIAL* INTO THE CALL FIVE MINUTES BEFORE ITS SCHEDULED START TIME.

2. Not less than five Court days prior to hearing (or 4:40 pm the Court day prior for Dept. 28), a copy of this document was served on all other parties and faxed to CourtCall, Telephonic Appearance Program Administrator at (310) 572-4679 OR (888) 88-FAXIN.

3. The non-refundable CourtCall Appearance Fee in the sum of $55.00 (plus additional fee of $35.00 if late filing is accepted) is paid as follows:

   ☐ Check (copy faxed-write case # on check) payable to CourtCall. DO NOT MAIL ORIGINAL. Signature below authorizes an ACH (electronic) debit in the amount and from the account listed on the check.

   ☐ Charged to CourtCall Debit Account No.: _____

   ☐ Charged to VISA, MasterCard or American Express:

   | TO BE COMPLETED ONLY ON THE COPY SUBMITTED TO CourtCall, LLC: |
   |---|
   | Credit Card:    O VISA    O MasterCard    O American Express<br><br>Credit Card Number: _____    Expiration Date: _____<br><br>To pay by credit card, the copy of this form submitted to CourtCall, LLC, must be signed by the person whose card is to be charged and must be faxed to CourtCall at (310) 572-4670 or (888) 88-FAXIN with the above credit card information completed. The signature below constitutes authorization to charge the above referenced credit card.<br><br>Date: _____ Name on Card: _____<br>　　　　　　　　　　　　　·Type Name　　　　　　　　Signature |

4. Request Forms are processed within 24 hours. Call CourtCall if you do not receive a faxed Confirmation from CourtCall within 24 hours. WITHOUT A WRITTEN CONFIRMATION YOU ARE NOT ON THE COURTCALL CALENDAR AND MAY BE PRECLUDED FROM APPEARING TELEPHONICALLY! COURTCALL'S LIABILITY CONCERNING THIS TELEPHONIC APPEARANCE IS LIMITED TO THE FEE PAID TO COURTCALL.

Dated: _____
　　　　　　　　　　　　　　　　　　　　Signature

4.25.02　　　　**REQUEST FOR COURTCALL TELEPHONIC APPEARANCE**

EXHIBIT_____
PAGE _____ OF _____

**Recording Requested By:**

Charles R. Rauch/Garry Cohen

**After Recording, Return To:**

Charles R. Rauch, Esq.
Garry Cohen , Esq.
Grathwohl, Rauch & Cohen PC
100 Marine Parkway, Suite 305
Redwood City, CA 94065

APN: 100-510-170

**2008-043525 CONF**
02:24pm 04/17/08 NP Fee: 13.00
Count of pages 3
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder



\* 2 0 0 8 0 0 4 3 5 2 5 A R \*

---

Robert and Erlinda Turner

                        Plaintiffs,

     vs.

Ocwen Loan Servicing, LLC and All Persons
Unknown, Claiming Any Legal or Equitable
Right, Title, Estate, Lien, or Interest in the
Property Described in the Complaint
Adverse to Plaintiffs Title, or Any Cloud on
Plaintiff's Title Thereto, and Does 1 through
30, inclusive

                        Defendants

Case No. **CIV 4 7 2 1 3 6**

**NOTICE OF PENDENCY OF ACTION**

[Code Civ. Proc. §§ 405.2, 405.4, 405.20]

---

    NOTICE IS GIVEN that the above action was commenced on April 1 7, 2007, in San Mateo

County Superior Court by Robert and Erlinda Turner, against Ocwen Loan Servicing, LLC, and all

persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the property, and

Does 1 to 20, inclusive. The action is now pending in the above court (Case Number 4 7 2 1 3 6 ).

    The above action alleges a real property claim affecting certain real property that is situated in

Alameda County, California, and that is commonly known as 1 Appian Way #705-5, South San

Francisco, CA , and more particularly described as follows:

    Parcel I:

    Unit 705-5, including the decks(s), as designated on the map entitled "Colina unit No. 1", which filed in the

office of the recorder of the county of San Mateo, state of California, on October 23, 1974, in book 86 of maps at

EXHIBIT _____
PAGE _____ OF _____

1  pages 18 to 27, inclusive, and the certificate of correction recorded September 29, 1975 in book 6945 of official

2  records, page 509 (File No. 94067-AI), and the certificate of correction recorded December 2, 1975 in book 6995

3  official records, page 732 (17040-AJ).

4        Excepting there from any portion of the common area lying within said unit.

5        Parcel II:

6        Together with the following appurtenant easements:

7        1. Non-Exclusive easements for the support of said parcel I through the common area and for repair of said

8  parcel a through all other units and through the common area.

9        2. An exclusive easement to use parking space No. 31-P, as said on the aforesaid map.

10       Parcel III:

11       An undivided .8469 percent interest as tenant in common in and to the common area, for

12  increment I, as shown on the plan and described in exhibit "S" of the restrictions.

13       Parcel IV:

14       Together with non-exclusive easements appurtenant to the common area through each unit and

15  parking space for support and repair of the common area.    [A.P.N. 100-510-170]

16  Dated: April _16_, 2008

17                                    GRATHWOHL, RAUCH & COHEN PC

18

19               By:      _____

20                        Garry Cohen
                          Attorney for Plaintiff
21                        Robert and Erlinda Turner

22

23

24

25

26

27

28

                                        2

1    **PROOF OF SERVICE BY CERTIFIED MAIL**

2    San Mateo County

3    Superior Court Case No.

4    *Turner et al v. Ocwen Loan Servicing, LLC et al.*

5    I, the undersigned, declare:

6    I am employed in the County of San Mateo, State of California. My business address is 100

7    Marine Parkway #305, Redwood City, Ca 94065. I am over the age of 18 and not a party to the above

8    cause.

9    That on April 17, 2008, I served the following documents:

10    **NOTICE OF PENDENCY OF ACTION**

11    by depositing a copy thereof, enclosed in separate sealed envelopes with postage fully prepaid in the

12    United States Certified Mail, return receipt requested, at Redwood City, California.

13    Each envelope was addressed respectively as follows:

14    Ocwen Loan Servicing, LLC
      P.O. Box 785055

15    Orlando, FL 32878

16
      I declare under penalty of perjury that the foregoing is true and correct. Executed April 17,

17
      2008 in Redwood City, California.

18

19

20    *[signature: Judy Valencia]*

21

22

23

24

25

26

27

28

3

EXHIBIT_____
PAGE _____ OF _____

San Mateo County
Superior Court Case No.
*Turner et al v.* Ocwen Loan Servicing, LLC *et al.*

I, the undersigned, declare:

I am employed in the County of San Mateo, State of California. My business address is 100 Marine Parkway #305, Redwood City, Ca 94065. I am over the age of 18 and not a party to the above cause.

That on April 22, 2008, I served the following documents:

**NOTICE OF PENDENCY OF ACTION**

by depositing a copy thereof, enclosed in separate sealed envelopes with postage fully prepaid in the United States Certified Mail, return receipt requested, at Redwood City, California.

Each envelope was addressed respectively as follows:

Ocwen Loan Servicing, LLC              Allison Waite
P.O. Box 785055                        HOUSER & ALLISON, APC
Orlando, FL 32878                      9970 Research Dr.
                                       Irvine, CA 92618

I declare under penalty of perjury that the foregoing is true and correct. Executed April 22, 2008 in Redwood City, California.

*Judy Valencia*
_____

EXHIBIT A
PAGE 33 OF 33

WHEN RECORDED MAIL TO:

OCWEN LOAN SERVICING, LLC
12650 INGENUITY DRIVE
ORLANDO FL 32826

TRA #  13-015
Trust No. 1083071-08
Loan No. XXXX0305

MAIL TAX STATEMENT TO:

Same as above

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDER ON: __February 20, 2008__

AS DOCUMENT NO: __2008-017416__

BY: __s/ Vanessa Davis__

Space Above This Line FIDELITY NATIONAL DEFAULT SOLUTIONS

Documentary Transfer Tax $.00
X Grantee was/was not the foreclosing beneficiary.
consideration $401,295.00
unpaid debt $421,081.81
non exempt amount $
__Computed on the consideration or value of property
conveyed.
__Computed on the consideration of value less liens or
encumbrances remaining at time of sale.

_____
Signature of Declarant or Agent
AP# 100-520-170-0

## TRUSTEE'S DEED UPON SALE

CAL-WESTERN RECONVEYANCE CORPORATION (herein called trustee)
does hereby grant and convey, but without covenant or warranty, express or implied to
U.S. BANK, N.A., AS TRUSTEE FOR REGISTERED HOLDERS OF HOME EQUITY ASSET TRUST 2004-8, HOME
EQUITY PASS-THROUGH CERTIFICATES, SERIES 2004-8

(herein called Grantee) the real property in the county of SAN MATEO ,State of California described as follows:
PARCEL I: UNIT 705-5, INCLUDING THE DECK(S) AS DESIGNATED ON THE MAP ENTITLED "COLINA UNIT
NO. 1'', WHICH FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF
CALIFORNIA, ON OCTOBER 23, 1974, IN BOOK 86 OF MAPS AT PAGES 18 TO 27, MORE COMPLETELY
DESCRIBED IN ATTACHED EXHIBIT A.
The street address and other common designation, if any, of the real property described above is purported to be:
1 APPIAN WAY #705-5
SOUTH SAN FRANCISCO  CA  94080

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, or Successor Trustee, or
Substituted Trustee, under that certain Deed of Trust executed by
ROBERT TURNER, A MARRIED MAN, AS HIS SOLE AND SEPARATE
PROPERTY
as Trustor, recorded October 07, 2004, as Document No. 2004-201099, in Book XX, page XX, of Official Records in the Office
of the Recorder of SAN MATEO County, California; and pursuant to the Notice of Default recorded April 03, 2006, as
Document No. 2006-048467 in Book XX, page XX of Official Records of said County, Trustee having complied with all
applicable statutory requirements of the State of California and performed all duties required by said Deed of Trust, including,
among other things, as applicable, the mailing of copies of notices or the publication of a copy of the notice of default or the
personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy
thereof.

TDUSCA.DOC                    Page 1 of 2                    Rev. 01/14/08

EXHIBIT B
PAGE 1 OF 3

TRA #   13-015
Trust No. 1083071-08
Loan No. XXXX0305

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public auction on **January 29, 2008** to said Grantee, being the highest bidder therefore, for **$401,295.00** cash, lawful money of the United States, in satisfaction pro tanto of the indebtedness then secured by said Deed of Trust.

**CAL-WESTERN RECONVEYANCE CORPORATION**

Dated:  **January 29, 2008**

Susan Smothers, Asst. Sec.

State of California )
County of San Diego)

On 2-13-08 ____ before me, **Rhonda Rorie** ____
a Notary Public in and for said State, personally appeared __**Susan Smothers, Asst. Sec.**__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                         (Seal)

Signature ____

RHONDA RORIE
COMM. # 1667858
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. May 16, 2010

EXHIBIT B
PAGE 2 OF 3

TS# 1083071-08

## EXHIBIT "A"
### Legal Description

PARCEL I:

UNIT 705-5, INCLUDING THE DECK(S) AS DESIGNATED ON THE MAP ENTITLED "COLINA UNIT NO. 1", WHICH FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA, ON OCTOBER 23, 1974, IN BOOK 86 OF MAPS AT PAGES 18 TO 27, INCLUSIVE, AND THE CERTIFICATE OF CORRECTION RECORDED SEPTEMBER 29, 1975 IN BOOK 6945 OF OFFICIAL RECORDS, PAGE 509 (FILE NO. 94067-AI), AND THE CERTIFICATE OF CORRECTION RECORDED DECEMBER 2, 1975 IN BOOK 6995 OFFICIAL RECORDS, PAGE 732 (17040-AJ).

EXCEPTING THEREFROM ANY PORTION OF THE COMMON AREA LYING WITHIN SAID UNIT.

PARCEL II:

TOGETHER WITH THE FOLLOWING APPURTENANT EASEMENTS:

1. NON-EXCLUSIVE EASEMENTS FOR THE SUPPORT OF SAID PARCEL I THROUGH THE COMMON AREA AND FOR REPAIR OF SAID PARCEL A THROUGH ALL OTHER UNITS AND THROUGH THE COMMON AREA.

2.   AN EXCLUSIVE EASEMENT TO USE PARKING SPACE NO. 31-P, AS SHOWN ON THE AFORESAID MAP.

PARCEL III:

AN UNDIVIDED .8469 PERCENT INTEREST AS TENANT IN COMMON IN AND TO THE COMMON AREA, FOR INCREMENT I, AS SHOWN ON THE PLAN AND DESCRIBED IN EXHIBIT "S" OF THE RESTRICTIONS.

PARCEL IV:

TOGETHER WITH NON-EXCLUSIVE EASEMENTS APPURTENANT TO THE COMMON AREA THROUGH EACH UNIT AND PARKING SPACE FOR SUPPORT AND REPAIR OF THE COMMON AREA.

EXHIBIT B
PAGE 3 OF 3

Recording Requested By:
MILA, Inc., DBA Mortgage Investment Lending Associates, Inc.

Return To:
MILA, Inc., DBA Mortgage Investment Lending Associates, Inc.
6021 244th Street SW
Mountlake Terrace, WA  98043

Prepared By:
MILA, Inc., DBA Mortgage Investment Lending Associates, Inc.
6021 244th Street SW
Mountlake Terrace, WA  98043

—————————————————[Space Above This Line For Recording Data]—————————————————

# DEED OF TRUST

Loan Number: 2004-09-23-00375                    MIN 1001752-0000145151-0

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  October 04, 2004
together with all Riders to this document.
(B) "Borrower" is
ROBERT TURNER, A MARRIED MAN

Borrower's address is 514 GRAND AVE., #1
SOUTH SAN FRANCISCO, CA 94080                    . Borrower is the trustor under this Security Instrument.
(C) "Lender" is
MILA, Inc., DBA Mortgage Investment Lending Associates, Inc.
Lender is a A Washington Corporation
organized and existing under the laws of  WASHINGTON

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01

-6A(CA) (0207)
Page 1 of 15                 Initials:
VMP MORTGAGE FORMS - (800)521-7291
DDS-CAL

We hereby certify that this is a true and
correct copy of the original
COMMONWEALTH LAND TITLE COMPANY

By: _____

EXHIBIT____
PAGE ___1___ OF _16_

Lender's address is 6021 244th Street SW
Mountlake Terrace, WA  98043

(D) "Trustee" is
COMMONWEALTH LAND TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  October 04, 2004
The Note states that Borrower owes Lender Three Hundred Sixty-Eight Thousand  & 00/100
                                                                                                    Dollars
(U.S. $368,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 01, 2034.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(CA) (0207)
DDS-CAL

Page 2 of 15

Initials: RI Emt

Form 3005  1/01

EXHIBIT    1
PAGE    2   OF   16

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of SAN MATEO :
       [Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]

PLEASE SEE COMPLETE LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF.

Parcel ID Number: 100-520-170                    which currently has the address of
1 APPIAN WAY, #705-5                                             [Street]
SOUTH SAN FRANCISCO                     [City], California    94080    [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(CA) (0207)                          Page 3 of 15                Initials: FT ESuf         Form 3005  1/01
DDS-CAL

EXHIBIT ___1___
PAGE __3__ OF 16



of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

EXHIBIT
PAGE 4 OF 10

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

EXHIBIT ____1____
PAGE __5__ OF _16_

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _R T f m_

EXHIBIT____/____
PAGE  6  OF 16



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207)          Page 7 of 15          Form 3005  1/01
DDS-CAL

Initials: _RT ESut_

EXHIBIT  1
PAGE ___1___ OF 16

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

EXHIBIT ___
PAGE ___ OF ___

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

EXHIBIT __1__
PAGE __9__ OF __16__

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6A(CA) (0207)
DDS-CAL

Page 10 of 15

Initials: _RT_Bmf_

Form 3005   1/01

EXHIBIT __1__
PAGE __10__ OF __16__



**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

EXHIBIT __1__
PAGE __11__ OF __16__

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

EXHIBIT 1
PAGE 12 OF 16



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: RT Bul

-6A(CA) (0207)    Page 13 of 16    Form 3005 1/01
DDS-CAL

EXHIBIT ___1___
PAGE ___13___ OF 16

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                                                    -Borrower
                                          ROBERT TURNER

_____          _____ (Seal)
                                                                                    -Borrower
                                          ERLINDA TURNER

_____ (Seal)   _____ (Seal)
                          -Borrower                                      -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                      -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                      -Borrower

-6A(CA) (0207)              Page 14 of 15              Form 3005   1/01
DDS-CAL

EXHIBIT ___
PAGE ___ OF ___

State of California
County of San Mateo

} ss.

On 10-4-04 before me, Wendy E Farley personally appeared

Robert Turner & Erlinda Turner

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Wendy E Farley_ (Seal)



WENDY E. FARLEY
COMM. # 1491009
NOTARY PUBLIC-CALIFORNIA
SAN MATEO COUNTY
COMM. EXP. MAY 22, 2008

-8A(CA) (0207)    Page 15 of 15    Initials: RT ErlT    Form 3005   1/01
DDS-CAL

EXHIBIT 1
PAGE 15 OF 16



Order No: 54121173

## Legal Description

All that certain real property situate in the County of San Mateo; State of California, described as follows:

(City of South San Francisco)

A Condominium comprised of:

Parcel I:

Unit 705-5, including the Deck(s) as designated on the Map entitled "Colina Unit No. 1", which filed in the Office of the Recorder of the County of San Mateo, State of California, on October 23, 1974, in Book 86 of Maps at Pages 18 to 27, inclusive, and the Certificate of Correction recorded September 29, 1975 in Book 6945 of Official Records, Page 509 (File No. 94067-AJ), and the Certificate of Correction recorded December 2, 1975 in Book 6995 Official Records, Page 732 (17040-AJ).

Excepting therefrom any portion of the Common Area lying within said Unit.

Parcel II:

Together with the following appurtenant easements:

1.    Non-exclusive easements for the support of said Parcel I through the Common Area        and for repair of said Parcel A through all other Units and through the Common        Area.

2.    An exclusive easement to use Parking Space No. 31-P, as shown on the aforesaid        map.

Parcel III:

An undivided .8469 percent interest as tenant in common in and to the Common Area, for Increment I, as shown on the plan and described in Exhibit "S" of the Restrictions.

Parcel IV:

Together with non-exclusive easements appurtenant to the Common Area through each Unit and Parking Space for support and repair of the Common Area.

**Commonwealth Land Title Company**
*1528 South El Camino Real, Suite 305 • San Mateo, CA 94402 • Phone: (650) 578-1950 • Fax: (650) 578-1342*

EXHIBIT____
PAGE _16_ OF _16_